UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| Q.R., a minor, by and through his natural mother and next friend JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>TITAN WEBSITES, INC<br>JOHN DOE D/B/A/ HENTAICITY.COM,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CASE NO.: 25-cv-1096<br><br>HON. JUDGE TEETER |

**DEFENDANT TITAN WEBSITES, INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS**

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendant Titan Websites, Inc. ("Titan") moves to dismiss the instant action for lack of personal jurisdiction. Plaintiff rests personal jurisdiction in this case on threadbare and false allegations of Titan's "targeting" Kansas residents, as well as Titan's contacts with third parties who *also* have no meaningful connection to Kansas or its residents. Due Process demands more.

1

I.     **Background and Factual Allegations**[1]

The Complaint alleges that despite a mom's ("Next Friend" or "Jane Doe") best efforts to insulate her minor son ("Plaintiff" or "Q.R.") from adult content on the internet via parental controls over his devices, Q.R. found an old laptop in a closet in their Olathe, Kansas home and began accessing pornographic websites—including Hentaicity.com, a site owned by Defendant Titan—without first clearing the hurdle of proving his age, as required by a newly-enacted Kansas law. *See* Dkt. 1 at ¶ 29-33, 36. Plaintiff's five claims all rest on the same allegedly wrongful conduct—Titan's failure to implement "reasonable age verification methods" as a condition of access to its online material, at least 25% of which meets the State's definition of content "harmful to minors." *See* K.S.A. § 50-6,146.

Plaintiff contends that this Court may exercise personal jurisdiction over Titan—an internet company headquartered and incorporated in the State of Washington—based on the latter's transacting business in Kansas, committing a tortious act in Kansas, causing injury in Kansas through certain out-of-state acts, and otherwise violating the Kansas Consumer Protection Act. *See* Dkt. 1 at ¶ 6-8 (citing K.S.A. § 60-308(b)(1)(A), (B), (G); K.S.A. § 50-638(a)). Specifically, Titan (and its John Doe codefendant[2]) are alleged to have targeted Kansas citizens by:

1. "do[ing] a substantial amount of business in Kansas through hentaicity.com as they engage in selling subscriptions and advertisements to Kansas Citizens, and/or profit[ing] from the web traffic of Kansas Citizens." *Id.* at ¶ 17;

---

[1] As the factual allegations in the State's pleading are entitled to deference in this motion to dismiss, Titan presents the relevant facts as alleged, reserving all rights to challenge the veracity of those allegations in an appropriate proceeding at a later date.

[2] As Hentaicity.com is wholly owned and hosted by Titan, the John Doe codefendant "owner" does not exist. Titan anticipates that Plaintiff will voluntarily dismiss the John Doe defendant upon Titan's filing its initial disclosures.

2. "expressly aim[ing] hentaicity.com at Kansas Citizens" like Q.R. *Id.* at ¶ 18;

3. "contract[ing] with Reflected Networks, a content delivery network ('CDN'), to enhance the speed and performance of hentaicity.com for users in and around Olathe, Kansas" via Reflected Networks' maintenance of "edge servers strategically located closer to Kansas residents" than Titan's Washington-based servers. *Id.* at ¶ 19-23; and

4. "contract[ing] with ad networks . . . to help monetize traffic on their website traffic [sic] in Kansas"—thereby "receiv[ing] payments from advertisers for the traffic Plaintiff and other Kansas citizens generated on hentaicity.com." *Id.* at ¶ 24-26.

## II.      Legal Framework

Where a defendant has moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff "bears the burden of showing that jurisdiction over the defendant is appropriate." *Serv. Experts, LLC v. Otte*, 609 F. Supp. 3d 1183, 1187 (D. Kan. 2022). This requires a prima facie showing of jurisdiction over each defendant, *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017), and with respect to each claim alleged, *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). The plaintiff must demonstrate that jurisdiction "(1) is legitimate under the state's long-arm statute, and (2) does not offend the Due Process Clause of the Fourteenth Amendment." *Serv. Experts*, 609 F. Supp. 3d at 1188 (citing *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015)). Only well-pled facts are accepted as true, with conclusory allegations properly ignored. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). And where the defendant challenges the plaintiff's jurisdictional allegations via affidavit or other proof, the plaintiff must support those jurisdictional allegations "by competent proof of the supporting facts." *Id.* at 1508.

Because the Kansas Supreme Court has interpreted the State's long-arm statute to extend jurisdiction to the outer bounds allowed under the Due Process Clause, this Court may proceed directly to the constitutional analysis. *See Merriman v. Crompton Corp.*, 282 Kan. 433, 146 P.3d 162, 179 (2006). Exercising jurisdiction consistent with due process requires a showing that the

3

defendant "'purposefully established minimum contacts with the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Old Republic*, 877 F.3d at 903 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

### *Minimum Contacts*

Depending on the relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state "may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction." *Id.* But here, any basis for personal jurisdiction must arise from *specific* jurisdiction and the "affiliatio[n] between the forum and the underlying controversy.[3] *Id.* Specific jurisdiction requires that the plaintiff's cause of action relate to the defendant's contacts with the forum state, and a plaintiff may demonstrate that a defendant bears constitutionally sufficient minimum contacts where it has (A) "purposefully directed its activities at residents of the forum state" and (B) the plaintiff's injuries "arise out of the defendant's forum-related activities." *Old Republic*, 877 F.3d at 904.

**A. Purposeful Direction**

The purposeful direction requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," nor the "unilateral activity of another party or a third person." *Id.* at 904-05 (quoting *Burger King*, 471 U.S. at 475). The relationship between the defendant and forum must arise from contacts that the "*defendant*

---

[3] General jurisdiction is manifestly absent here. "A court may assert general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (cleaned up). But there are no allegations of Titan's "continuous and systematic" business contacts with Kansas sufficient to render it "essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. Titan is instead at home in *Washington*, where it is organized and maintains its principal place of business and its resident agent for service of process.

4

*himself*" created—requiring an analysis "focus[ed] on 'the defendant's contacts with the forum' and not merely the defendant's contacts 'with persons who reside there.'" *Serv. Experts*, 609 F. Supp. 3d at 1188–89 (emphasis in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014)). "Mere foreseeability" of injury in the forum state will not suffice. *Id.*

The Tenth Circuit has delineated three frameworks to determine whether an out-of-state defendant's activities establish the "purposeful direction" required for minimum contacts. These include assessing the defendant's (1) continuing relationships with forum state residents ("continuing relationships"); (2) deliberate exploitation of the forum state market ("market exploitation"); and (3) harmful effects in the forum state ("harmful effects"). *Id.*

1. Continuing relationships with forum state residents

The typical purposeful direction analysis looks to the out-of-state defendant's "continuing relationships and obligations with citizens of [the forum state]." *Id.* (quoting *Burger King*, 471 U.S. at 473). The Supreme Court "ha[s] upheld the assertion of jurisdiction over defendants who have purposefully 'reached out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (brackets omitted). Because a "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction," courts must "evaluate the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[.]'" *Id.*

2. Deliberate exploitation of the forum state market

Purposeful direction also may be established by a demonstration of an out-of-state defendant's "continuous and deliberate exploitation of the forum state market." *Id.* at 905-06

(cleaned up) (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984)). "Regular monthly sales of thousands of magazines" in the forum state sufficed in *Keeton*, where the defendant "continuously and deliberately exploited the New Hampshire market" and could therefore "reasonably anticipate being haled into court there" to defend a libel action based on the contents of its magazine. *Keeton*, 465 U.S. at 774, 781. But in *Old Republic*, the Tenth Circuit compared two sister circuit decisions that would guide its "deliberate exploitation" analysis. The first concerned an out-of-state domain name registration website that had "thoroughly, deliberately, and successfully exploited" the forum state market, with the state's consumers flocking "by the hundreds of thousands" and sending "many millions of dollars to the company each year"—lured by the defendant's "extensive national advertising" that included "many television advertisements on national networks" and "extensive venue advertising and celebrity and sports sponsorships." *See Old Republic*, 877 F.3d at 906 (discussing *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010) (finding purposeful direction)). The second concerned an out-of-state online matchmaking service that included free profiles created by just 20 forum state residents who, as far as the court could tell, "may have done so unilaterally by stumbling across the website and clicking a button that automatically published their dating preferences online." *Old Republic*, 877 F.3d at 906-07 (discussing *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) (finding no purposeful direction)).

   3. <u>Harmful effects in the forum state</u>

Finally, even without continuing relationships or deliberate market exploitation, purposeful direction may be established by an out-of-state defendant's "*intentional* conduct [that] targets and has substantial harmful effects in the forum state." *Old Republic*, 877 F.3d at 907 (emphasis in original) (citing *Calder v. Jones*, 465 U.S. 783, 790–91 (1984)). Jurisdiction on this

6

basis requires satisfaction of three elements: (a) an "intentional action" that was (b) "expressly aimed at the forum state" with (c) "knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008). When applied to internet activities, "effects test" cases "usually involve claims like defamation and trademark infringement, which are generally considered *intentional* torts." *Old Republic*, 877 F.3d at 908 (emphasis in original). Thus, in *Shrader v. Biddinger*, the Tenth Circuit searched for evidence of the defendant's "intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." 633 F.3d 1235, 1240 (10th Cir. 2011). Critically, the *Shrader* court held that "maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Id.* at 1241. Instead, the court "look[ed] to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id.* Finding none, the court affirmed the district court's dismissal. *Id.* at 1250.

    B. **"Arising out of" defendant's forum-related activities**

Once a plaintiff has established purposeful direction, step two of the minimum contacts test requires that the plaintiff's injuries "arise out of" the defendant's forum-related activities—meaning that "there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'" *Old Republic*, 877 F.3d at 908; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930 n.6 (2011) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

### *Fair Play and Substantial Justice*

Even when a Plaintiff is able to establish that the defendant bears the requisite minimum contacts with the forum, the court is still to ask the additional question whether exercising jurisdiction would be so unreasonable as to offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987). The Tenth Circuit makes this assessment by determining "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1279–80 (10th Cir. 2005). Where a Plaintiff has already established minimum contacts, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

### III.   Analysis and Argument

Plaintiff rests personal jurisdiction in this case on allegations that Titan "targeted" Kansas residents and otherwise worked with third parties who likewise bore some connection to the State. But these allegations cannot demonstrate, under any theory of "purposeful direction," the minimum contacts that would render the exercise of jurisdiction consistent with due process. And even if there *were* minimum contacts between Titan and the Kansas forum, exercise of jurisdiction would be unreasonable.

### *Titan Lacks Minimum Contacts with the Kansas Forum*

Titan's nexus to the State of Kansas amounts to no more than "random, fortuitous, [and] attenuated contacts" that fail to meet the constitutional threshold for minimum contacts. Those

contacts are remarkably few: Titan is organized under the laws of Washington with a principal place of business in Seattle. *See Exhibit 1,* Holcomb Decl. ¶ 3. It is not registered with the Kansas Secretary of State as a foreign corporation conducting business in Kansas. *Id.* ¶ 4. It does not have an authorized agent for service of process in Kansas. *Id.* It does not pay taxes in Kansas. *Id.* ¶ 5. It does not maintain any bank accounts, books, records, mailing addresses, or phone numbers in Kansas. *Id.* ¶ 6. It does not have offices, agents, or employees in Kansas. *Id.* ¶ 7. It does not lease or own any real property in Kansas. *Id.* ¶ 8. It does not process credit card transactions in Kansas. *Id.* ¶ 9. It does not contract with vendors based in Kansas. *Id.* ¶ 10. It does not advertise or otherwise solicit business in Kansas. *Id.* ¶ 11. It does not design content specifically for the Kansas market. *Id.* ¶ 12. It does not have servers in Kansas or use a Kansas-based internet service provider.[4] *Id.* ¶ 13.

In fact, Titan's only alleged contacts with Kansas are meager, remote, and insufficient to establish jurisdiction.

### A. Subscriptions and ad sales

Plaintiff alleges that Titan conducts a "substantial amount of business" in Kansas through sales of "subscriptions and advertisements to Kansas Citizens," or that it otherwise receives profits "from the web traffic of Kansas Citizens." *Id.* at ¶ 17.

---

[4] Courts undertake a case-by-case analysis to determine whether due process is satisfied and often decline to exercise jurisdiction even where the defendant *does* bear some tie or ties to the forum state. *See, e.g., Ferren v. Westmed, Inc.*, 2019 WL 7116082, at *3 (D. Kan. Dec. 23, 2019) (defendants' knowledge that plaintiff employee lived in Kansas did not establish minimum contacts there when "there [we]re no allegations that show that they were seeking to hire a Kansas-based sales representative, that they wanted to promote their business interests in the state, or even that they thought that Kansas would be a central location from which plaintiff could cover a regional territory"); *Service Experts*, 609 F. Supp. 3d 1183 (former employee's solicitation of business in Kansas on behalf of his new employer was insufficient to establish new employer's minimum contacts with Kansas in former employer's action alleging tortious interference with business expectancy and contract).

First, a point of clarification: Titan does *not* sell subscriptions (and never has). It has never charged a visitor—Kansan or otherwise—for the privilege of viewing its content. *See* Holcolm Decl. at ¶ 9. Plaintiff's allegation to the contrary is entitled to no weight. *See Wenz*, 55 F.3d at 1508 (plaintiff must support her jurisdictional allegations "by competent proof of the supporting facts" when disputed by a defendant's affidavit).

Titan does, however, fund its operations through ad revenue generated by web traffic, which it captures (as Plaintiff alleges) by contracting with ad networks that supply the banner ads. *See* Dkt. 1 at ¶ 24-26; Holcolm Decl. at ¶ 18. But Titan simply does not "aim" its site—or the ads that appear there—at Kansans, and its profit engine does not depend in any way on the particular location of its visitors within the United States. Rather, "[a]d revenues are determined by the number of advertising impressions[5] within a *country*, but not a specific *state*—meaning that a Kansas viewer and a California viewer, each with identical viewing histories on hentaicity.com, will generate the same ad revenues for Titan." Holcolm Decl. at ¶ 18. Without activity "expressly aimed at the forum state," the "effects" test goes unsatisfied. *Dudnikov*, 514 F.3d at 1072.

Nor is the "deliberate exploitation" test satisfied by wholly unsubstantiated allegations that Titan conducts a "substantial amount of business" in Kansas through ad sales or web traffic. In fact, before Titan blocked hentaicity.com in the State, Kansans comprised an infinitesimal percentage (about .001%) of Titan's web traffic—a far cry from the "hundreds of thousands" of consumers sending "many millions of dollars to the company each year" in *uBID, Inc.*, 623 F.3d

---

[5] In web advertising, an "impression" is the most basic unit of measurement. it simply means that an ad was fetched and displayed (or at least attempted to be displayed) on a webpage or application.

421 (discussed in *Old Republic*, 877 F.3d at 906). *See* Holcomb Decl. at ¶ 15. That negligible traffic owed to Kansans generated *less than $50* in monthly ad revenue for Titan. *Id.* at ¶ 19.

Unsurprisingly, courts from Kansas to both costs have recognized that due process does not permit the exercise of jurisdiction over a defendant based on meager ad sales (or even nominal *product* sales) to forum state consumers. *See Inspired by Design, LLC v. Sammy's Sew Shop*, LLC, 200 F. Supp. 3d 1194, 1201 (D. Kan. 2016) (declining to exercise personal jurisdiction where "Defendants merely maintain a website that is accessible anywhere in the world, including Kansas" and "through the internet, they have made nominal sales to Kansas."). The authority for this point is overwhelming,[6] and Titan's allegations fail to distinguish this case from the myriad others that have declined to find purposeful direction.

---

[6] *See, e.g., Brothers and Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948 (8th Cir. 2022) (finding no jurisdiction in Missouri over out-of-state company selling products over the internet; "[Plaintiff] has not alleged that [defendant] took such purposeful, targeted action towards Missouri or Missouri consumers. All [plaintiff] alleges is that a Missouri consumer accessed [defendant's] nationally available website and purchased a shirt."); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021) (finding no jurisdiction in Texas over out-of-state company; "At bottom, the only reason to hale HuffPost into Texas is that Texans visited the site, clicking ads and buying things there. But as far as Johnson has alleged, those visits reflect only HuffPost's universal accessibility, not its purposeful availment of Texas."); *Kuan Chen v. United States Sports Academy, Inc.*, 956 F.3d 45, 60-61 (1st Cir. 2020) (finding no jurisdiction in Massachusetts over out-of-state company's solicitation of online students who happened to be located in Massachusetts; "[N]o evidence in the record that [defendant] either aims its informational website specifically at prospective students in Massachusetts or derives significant revenue from Massachusetts-based individuals through its maintenance of this website" or that the defendant had "solicited either [the plaintiff's] enrollment or his reenrollment through this website while [the plaintiff] was in Massachusetts."); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) (holding that the mere operation of a commercially interactive website does not subject operator to jurisdiction absent evidence that operator directly targeted its website to the forum state); *Annie Oakley Enterprises, Inc. v. Sunset Tan Corporate & Consulting, LLC*, 703 F. Supp. 2d 881, 893 (N.D. Ind. 2010) (finding no jurisdiction in Indiana where website did not target the forum specifically and the quantity of goods sold in forum through the site was "insignificant"); *Roscoe v. P.O.W. Network*, 2010 WL 3906793 (D.N.J. 2010) (finding no jurisdiction in New Jersey based merely on nonprofit organization's website that offered merchandise for sale and solicited donations throughout United States but did not

11

### B. Individual customization

Next, Plaintiff alleges that Titan has "expressly aimed hentaicity.com at Kansas Citizens" like Q.R. Dkt. 1 at ¶ 18. A charitable read of Plaintiff's later allegations suggests that the argument might go like this: Because, "upon information and belief, Defendants use their own proprietary SEO optimization strategies, proprietary algorithms, website design, and content curation to target Q.R. based on his personal data and search history so they may curate specific content for him based on these metrics," *id.* at ¶ 34, and because "[t]hese algorithms and content curation processes drove Q.R. to hentaicity.com, where he was delivered specific content tailored to him," *id.* at ¶ 35, Titan has done more than merely maintain a website that Kansans like Q.R. could visit.

Whether any theory of "purposeful direction" would encompass such algorithmic targeting of users who just so happen to be forum residents is dubious at best. But more fundamentally, Plaintiff's underlying allegations are untrue. As Titan's President makes plain, "Titan engages in no individual user customization whatsoever within hentaicity.com; every site visitor is presented with the same website, regardless of his location, past site views, or other individual characteristic." Holcolm Decl. at ¶ 14. "Likewise, Titan engages in no customized search engine optimization (SEO); the same Google search from a 70-year-old female doctor in California and a 30-year-old male accountant in Kansas are equally likely to produce hentaicity.com among the search results." *Id.* Plaintiff's suggestion to the contrary cannot defeat evidence disproving it. *See Wenz,* 55 F.3d at 1508.

---

target New Jersey specifically); *Eagle Coffee Co., Inc. v. Eagle Coffee Intern., Inc.*, 2010 WL 481201 (D. Md. 2010) (finding no jurisdiction in Maryland based merely on online sales to forum residents without specific evidence that defendant targeted the forum).

### C. Engagement of a CDN

Finally, Plaintiff alleges that Titan has "contracted with Reflected Networks, a content delivery network ('CDN'), to enhance the speed and performance of hentaicity.com for users in and around Olathe, Kansas" by way of the CDN's "edge servers strategically located closer to Kansas residents" than Titan's Washington-based servers. Dkt. 1 at ¶ 19-23.

The argument fails for numerous reasons. First, it is axiomatic that the contacts of third parties are jurisdictionally insignificant. *See Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused minimum contacts inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.") (cleaned up). A plaintiff instead must establish that the defendant *itself* established sufficient contacts with the forum state. *See id.* at 284-286; *C5 Med. Werks v. CeramTec GmbH*, 937 F.3d 1319, 1323-1324 (10th Cir. 2019) (holding that promotion in the forum state is a fortuitous contact, not purposeful direction, when third parties (rather than defendant) determine the location of the promotion; *Wingate v. Barkman Honey, LLC*, 2020 WL 362647, at *3 (D. Kan. Jan. 22, 2020) (Teeter, J.) (holding that a plaintiff could not rely on the contacts of a "member" of defendant-trade association to establish minimum contacts).

Second, even if third party contacts *were* sufficient, Plaintiff has not even alleged that Reflected Networks maintains servers inside Kansas. Nor could it: Reflected Networks' website explains that its "global CDN network has over 25 localized points of presence" worldwide[7]; if Plaintiff had reason to believe that one of those were located in Kansas, he could have alleged as much. Without it, he cannot even make out his prima facie case of contacts between *that third party* and the forum state.

---

[7] *See* Reflected Networks, "Global CDN" webpage, *available at*: https://reflected.net/globalcdn?.

But these first two points elide perhaps the most significant: While it is true that Titan has engaged Reflected Networks to provide viewers with a better video playback experience via use of its geographically dispersed server network, it did *not* do so to improve the playback experience *for Kansans in particular*. *See* Holcolm Decl. at ¶ 17. "Titan did not (and still does not) know where Reflected Networks maintains its CDN servers (nor does it care), and Reflected Networks does not offer its clients the ability to customize its network of CDN servers to prioritize video playback in one region or another." *Id.* From Titan's perspective, Kansans are no more or less likely to see improved video playback than citizens of any other state or country on the planet.

Plaintiff cannot shoehorn Titan's engagement with a third party CDN into any cognizable theory of "purposeful direction."

### *Exercising jurisdiction would defy traditional notions of fair play and substantial justice*

Without a showing of the purposeful direction required for minimal contacts, the jurisdictional inquiry ends. But a word on the "reasonableness" of requiring Titan to defend this suit is merited anyway. Setting aside the unfairness of defendant a suit in the absence of *any* meaningful contacts with the forum, there also is no "shared interest of the several States in furthering fundamental substantive social policies" reinforced by the AV Law. *See Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d at 1281. Unlike, say, a common law breach of contract or tort action, Kansas remains within the minority of states to have enacted age verification legislation, yet its attempt to regulate the internet would do real damage to citizens of those other states that have sought to protect minors from adult content in a more effective (and restrained) fashion. Admirers of the First Amendment, Commerce Clause, and basic notions of interstate

14

comity should recoil at the suggestion that any one state should be permitted to police the internet as the Kansas legislature has attempted here.

## IV. Conclusion

Because this Court's exercise of jurisdiction over Titan would flout due process, this case should be dismissed accordingly.

Respectfully submitted,

/s/Jeffrey Sandman
Jeffrey Sandman, La. Bar #39073*
Sandman Law LLC
5208 Magazine St., Ste 364
(978) 886-0639
jeff@sandman-law.com

/s/Maxwell E. Kautsch
Kautsch Law, L.L.C.
By Maxwell E. Kautsch, #21255
810 Pennsylvania St., Ste. 207
Lawrence, KS 66044
(785) 840-0077
fax (785) 842-3039
maxk@kautschlaw.com

*Admitted *pro hac vice*

Attorneys for Defendant Titan Websites, Inc.

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was filed electronically on the date and time shown on the electronic file stamp, providing notice by CM/ECF to all counsel of record.

/s/ Maxwell E. Kautsch
_____
Maxwell E. Kautsch