MANN WYATT TANKSLEY
201 E. 1st Avenue
Hutchinson, KS 67501
(620) 662-2400
(620) 662-2443 (Fax)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Q.R. a minor, by and through his natural mother and next friend JANE DOE,<br><br>        Plaintiff,<br><br>v.<br><br>TITAN WEBSITES, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.: 6:25-cv-01096<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S RESPONSE TO DEFENDANT TITAN WEBSITES, INC.'S MOTION TO DISMISS BASED ON PERSONAL JURISDICTION**

This is Plaintiff Q.R.'s response in opposition to Defendant Titan Websites, Inc. ("Defendant") Motion to Dismiss and Memorandum in Support, brought by and through his natural mother and next friend, Jane Doe. The issue before this Court is straightforward:

1. **Has Plaintiff adequately alleged purposeful direction sufficient to support specific personal jurisdiction?** The answer is yes. Defendant is clearly doing business over the internet and has knowledge that its website activity reaches Kansas citizens, from whom it profits. Furthermore, they have contracted with content delivery networks ("CDN") to improve the speed and reliability of its website for users in Kansas. In doing so, Defendant has purposefully availed itself of the benefits of doing business in Kansas, and must also accept the corresponding legal responsibilities that such conduct carries.

**STANDARD OF REVIEW**

To survive a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. *Rainy Day Books, Inc. v. Rainy Day Books & Cafe, L.L.C.,* 186 F. Supp. 2d 1158, 1160 (D. Kan. 2002). In considering whether a plaintiff has made a prima facie showing of personal jurisdiction over a defendant, the allegations the plaintiff's complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *Behagen v. Amateur Basketball Ass'n. of U.S.A.,* 744 F.2d 731, 733 (10th Cir.1984). "In order to defeat the plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Rainy Day Books*, 186 F.Supp.2d at 1160. In this case, Plaintiff has alleged specific, unrebutted, and substantiated facts that establish a prima facie showing of personal jurisdiction over Defendant, sufficient to defeat its Rule 12(b)(2) motion.

**ARGUMENTS AND AUTHORITIES**

**I.   Plaintiff has Alleged Facts Establishing Specific Personal Jurisdiction.**

Before this case can proceed, this Court must determine whether it has personal jurisdiction over Defendant. *Stafford v. Jankowski*, 338 F. Supp. 2d 1225, 1227 (D. Kan. 2004). To establish personal jurisdiction, a plaintiff must satisfy both the Kansas long-arm statute and the requirements of constitutional due process. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). Because Kansas's long-arm statute is interpreted broadly and extends to the limits of federal due process, the pertinent analysis focuses solely on whether exercising jurisdiction would offend due process. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998). Due process permits a federal court to exercise jurisdiction over a non-resident defendant where the defendant has established "minimum contacts" with the forum. *World-Wide Volkswagen Corp. v. Woodson*,

444 U.S. 286, 291 (1980). These minimum contacts may support either general or specific jurisdiction. *OMI Holdings*, 149 F.3d at 1090–91. In the present case, Plaintiff's claims are premised on this Court exercising specific jurisdiction over the Defendant.

"Specific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1078 (10th Cir. 2008). Thus, specific jurisdiction exists when (1) the defendant has purposefully directed its activities at the forum state, and (2) the plaintiff's claims arise out of or relate to those activities. *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221–22 (10th Cir. 2021) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). In the present case, the second element is unquestionably met. Plaintiff has alleged that his injuries arise directly from his access to Defendant's website while in Kansas. *See* Doc. 1, Pl.'s Compl. ¶¶ 29–36. Accordingly, the central inquiry in this Response is whether Defendant's internet activity demonstrates purposeful direction sufficient to support specific jurisdiction. To answer this question, Courts in this Circuit analyze cases under the *Zippo* "sliding scale" test or the *Shrader* test. *See Parah, LLC v. G' Strat LLC*, No. 2:13cv756, 2014 U.S. Dist. LEXIS 17219, at *9 (D. Utah Feb. 7, 2014); *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). Here, Plaintiff has alleged facts which make prima facie showing of jurisdiction under either analysis.

### a. *Plaintiff has shown purposeful direction under Zippo, as Defendant is "clearly doing business over the internet."*

While not expressly adopted by the Tenth Circuit, courts within the Circuit have consistently applied the *Zippo* "sliding scale" test to assess whether a website has purposefully directed its activities toward a particular forum. *Parah,* 2014 U.S. Dist. LEXIS 17219, at *9. Under this test, passive websites that merely provide information to users do not give rise personal

jurisdiction, whereas sites that are "clearly doing business over the internet" can establish purposeful direction. *Id.* Whether a site is "clearly doing business" turns on "the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123–24 (W.D. Pa. 1997). In creating this test, the *Zippo* court reasoned "[t]raditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper." *Id.* citing *Burger King,* 471 U.S. at 475. Thus "[d]ifferent results should not be reached simply because business is conducted over the Internet." *Id*. applying *Compuserve, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir. 1996).

The District of Kansas most notably applied this reasoning in *Rainy Day Books.* There, the court found the defendant's website was "clearly doing business over the Internet," as it possessed multiple interactive commercial features which allowed users to subscribe to email lists, access gift certificate information, and purchase books through a third-party service. *Rainy Day Books*, 186 F. Supp. 2d at 1164–65. Accordingly, the website's commercial nature and accessibility in Kansas gave rise to purposeful direction, supporting the exercise of specific personal jurisdiction for harms arising from that activity. *Id*. While the defendant argued that any Kansas transactions on the site were manufactured by the plaintiff, and thus could not support personal jurisdiction, the court disagreed, relaying the key inquiry was whether the defendant's website, by its own design, enabled Kansas residents to engage in commercial transactions. *Id*. at 1165. Thus, because the defendant intentionally operated a site that both committed a wrong in Kansas and enabled commercial transactions with Kansas residents, the court held that it had purposefully availed itself to the forum. *Id*. The fact that some purchases were facilitated by the plaintiff was immaterial;

those actions merely confirmed that the website functioned as intended and was capable of causing harm in Kansas. *Id*. at 1164–65.

Tenth Circuit courts have repeatedly applied this precedent in making findings of specific personal jurisdiction. *See Ceva Animal Health, LLC v. Leetronics Corp.*, No. 2:23-cv-02081-HLT-KGG, 2023 U.S. Dist. LEXIS 104747, at *11 (D. Kan. June 16, 2023) (H. Teeter, J.) (citing *Rainy Day Books* to find specific jurisdiction where defendants sold infringing products through an interactive Amazon storefront to Kansas residents); *Parah*, 2014 U.S. Dist. LEXIS 17219, at *10 ("Just as the court found in *Rainy Day Books*, this court finds Defendant is clearly doing business over the internet. Defendant has purposely set up a website providing for a high level of interactivity, which encourages customers to access its website to purchase the Accused Products."); *Del Sol, L.C. v. Caribongo, L.L.C.*, No. 2:11CV573DAK, 2012 U.S. Dist. LEXIS 20542, at *10 (D. Utah Feb. 17, 2012) ("As in *Rainy Day Books*, the court finds that Caribongo is clearly doing business over the internet. Caribongo has purposefully set up a website providing for a high level of interactivity, which encourages customers to access its website to purchase products.").

Underlying these court's decisions to apply this test is the simple, yet compelling notion that "**[s]ellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it**." *Leach v. Pharmedoc Inc.*, 2017 U.S. Dist. LEXIS 33565, at *4 quoting *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2006) (emphasis added). Indeed, even when those benefits are meager and stem from a small number of transactions, they still carry with them responsibility for harm caused. *See Id*. (finding personal jurisdiction where the defendant sold "at least four" infringing body pillows).

In the present case, Plaintiff has clearly alleged facts demonstrating that Defendant is "clearly doing business over the Internet" through the intentional operation of hentaicity.com. As Plaintiff alleges, and Defendant confirms, Defendant uses ad networks to "monetize traffic" on hentaicity.com from users in Kansas and generate revenue. *See* Doc. 33-1, Holcomb Dec., ¶ 18; *see also* Doc. 1, Pl.'s Compl., ¶ 24-26. Defendant even takes these allegations a step further and relays that generating ad revenue from their website's visitors is "the only way [Defendant] makes money." *See* Doc. 33-1, Holcomb Dec., ¶ 18. As is made plain as day by Plaintiff's allegations and Defendant's affidavit, Defendant is clearly doing business over the internet through hentaicity.com. Given Plaintiff's ability to access the website from Kansas, Defendant has "purposefully directed" their activities towards Kansas residents under the *Zippo* "sliding scale" test as applied by *Rainy Day Books*.

### b. Purposeful direction may be found under Shrader, as Defendant possesses "fatal" knowledge.

Despite the *Zippo* "sliding-scale" test's frequent and enduring use, a Tenth Circuit appellate court expressly declined to adopt it as the definitive standard for evaluating personal jurisdiction in internet cases. *Shrader v. Biddinger*, 633 F.3d 1235, 1242 n.5 (10th Cir. 2011). Rather, the *Shrader* court favored a "*Calder*-derived" framework for analyzing purposeful direction in the online context. *Id.* at 1241. Under *Calder*, purposeful direction towards a forum may be established in the absence of continuing relationships or market exploitation when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state. *Calder v. Jones,* 465 U.S. 783, 791, 104 S. Ct. 1482 (1984). The Tenth Circuit has distilled this framework into a three-part test requiring: (1) an intentional act, (2) expressly aimed at the forum state, and (3) with knowledge that the brunt of the injury would be felt in that forum. *Dudnikov*, 514 F.3d at 1072.

Consistent with this approach, the *Shrader* court held that while satisfying the *Zippo* test can establish the "intentional act" prong, courts must further determine whether the defendant's internet activity was aimed at the forum state. *See ClaimSolution, Inc. v. Claim Solutions*, LLC, No. 17-2005-JWL, 2017 U.S. Dist. LEXIS 101907, at *8 (D. Kan. June 30, 2017) (applying *Shrader*). At the pleading stage, if these first two elements are met, purposeful direction will be established. *Newsome*, 722 F.3d at 1269 (noting that when the first two *Calder* elements are met, courts may presume the defendant knew the harm would be felt in the forum).

In this case, Defendant characterizes itself as a passive website that is "entirely agnostic about, and unaware of, the whereabouts of its individual viewers." *See* Doc. 33-1, Holcomb Dec., ¶ 16. Defendant argues this alleged passivity, combined with its purportedly meager ad sales attributable to Kansas and the absence of state specific customization, presents insufficient facts to establish specific personal jurisdiction under *Shrader*. *See* Doc. 33, Def.'s MTD, pp. 8–12. In support, Defendant relies on *Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, which holds "merely maintain[ing] a website that is accessible anywhere in the world, including Kansas . . . without *more*, will not suffice to subject a defendant to specific personal jurisdiction." 200 F. Supp. 3d 1194, 1205 (D. Kan. 2016) citing *Shrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011) (emphasis added). However, this case law leaves a central question unresolved. Namely, what facts, if any, would qualify as the "more" that *Shrader* requires to transform internet activity into purposeful direction? The Tenth Circuit answered this question in *XMission, L.C. v. PureHealth Research*.

In *XMission*, the controlling precedent in this case, the Tenth Circuit Court of Appeals, applying *Shrader*, reversed a Rule 12(b)(2) dismissal after finding that the defendant had purposefully directed internet activity into Utah by sending over 600 promotional emails to

individuals it knew were Utah residents. 105 F.4th 1300, 1310 (10th Cir. 2024). Although the emails were part of a much larger nationwide marketing effort, and the plaintiff's had "opted into" receiving the emails, jurisdictional discovery revealed the defendant maintained a database tying recipients' email addresses to their physical and IP addresses. *Id.* at 1310. As a result, it was undisputed that the defendant knew its emails were reaching individuals in Utah. The court found this fact "fatal" to the defendant's appellate position, as such knowledge demonstrated the defendant had "directed its conduct at the forum state." *Id*. Thus, even broadly disseminated internet activity can support specific jurisdiction where the defendant knows its actions are reaching individuals in the forum state.

> i. *Defendant possesses "fatal" knowledge as demonstrated by their use of ad networks.*

In the present case, Plaintiff has alleged that Defendant possesses knowledge of user location. *See* Doc. 1, Pl.'s Compl., ¶¶ 24–26. By using advertising networks, Defendant necessarily gains access to geolocation and targeting data that allows it, or others advertising on its website to direct campaigns to specific users in specific places. *See* Pl.'s Ex. A, Banafa Dec., ¶ 8. Resultingly, Defendant has direct knowledge that its content reaches Kansas residents. *Id*. ¶ 11.

Indeed, Defendant's own declaration confirms this reality. **Mr. Holcomb admits that Defendant has tracked the number of Kansas users visiting hentaicity.com, and calculated the ad revenue generated by this traffic.** *See* Doc. 33-1, Holcomb Dec., ¶¶ 15–19. These statements demonstrate that Defendant monitors where its users are located, measures the revenue attributable to those users, and has the ability to take deliberate action based on that information. As in *XMission*, such knowledge should be "fatal" to Defendant's motion to dismiss as it establishes purposeful direction of internet activity into Kansas.

        *ii. Defendant possesses "fatal" knowledge as demonstrated by their use of CDNs.*

While the above facts and allegations alone support a finding that Defendant purposefully directed its conduct toward Kansas, Plaintiff's Complaint goes further. Plaintiff alleges, and Defendant has confirmed that Defendant has contracted with Reflected Networks, a content delivery network (CDN), to improve the speed and reliability of its website for users, including those in and around Kansas. *See* Doc. 1, Pl.'s Compl. ¶¶ 18–23; see also *See* Doc. 33-1, Holcomb Dec., ¶ 17. The use of CDNs necessarily implies the use of geolocation services by Defendant. The entire value proposition of a CDN depends on delivering website data from the server closest to the end user, which requires knowing where that user is located. *See* Pl.'s Ex. A, Banafa Dec., ¶ 3-a. To accomplish this, CDN providers and website owners collect IP addresses and related information such as time zones, cookies, and other behavioral identifiers, and then tie that information directly to the location of a user. *Id*. That location data determines which server the user is routed to, thereby minimizing load times and optimizing performance. *Id*. In this way, Defendant's reliance on Reflected Networks confirms that it has knowledge of, and directs its website activity into, Kansas, again satisfying the knowledge requirements of *Xmission*.

    In sum, Defendant's own admissions, together with the unavoidable geolocation functions of its ad networks and CDN services, demonstrate that it is not "agnostic" about user location. Defendant has knowingly directed internet activity into Kansas, and knowingly garnered revenue from their traffic. Under *XMission*, such knowledge satisfies the "more" required by *Shrader* to converts internet activity into purposeful direction. Defendant therefore possesses the "fatal" knowledge that compels a finding of specific personal jurisdiction in this forum.

### c. *Defendant's deliberate choice to contract for CDN services demonstrates purposeful direction.*

While the previous section discusses Defendant's knowledge of user location in light of its intentional conduct of "clearly doing business over the Internet," this section expands on the intentional conduct inherent in contracting for CDN services. By intentionally contracting with Reflected Networks to improve playback for users across the United States, including Kansas, Defendant has engaged in purposeful action that courts recognize as express aiming at the forum. While the Tenth Circuit has not touched on this exact issue, the Ninth Circuit has tackled it on multiple occasions, consistently finding that a defendant's use of CDN's establishes purposeful direction. *See e.g. Doe v. WebGroup Czech, A.S.*, 93 F.4th 442 (9th Cir. 2024) (overruled on other grounds)[1] (finding the defendants "showed purposeful direction [through the] use of U.S.-based content delivery network services to improve the viewing experience of U.S. visitors[.]"); *Will Co. v. Ka Yeung Lee*, 47 F.4th 917 (9th Cir. 2022) (overruled on other grounds)[2] (finding purposeful direction where defendants, among other factors, made the choice to purchase content delivery network services for North America, which made the site load faster for viewers in that region). This line of authority makes clear that a defendant's purposeful decision to enhance website performance for users in a forum is sufficient to purposeful direction.

Here, Defendant admits that it purchased CDN services to provide a "better video playback experience throughout the United States via use of its geographically dispersed server network." *See* Doc. 33-1, Holcomb Dec., ¶ 17. By definition, targeting the entire United States necessarily includes targeting Kansas. Defendant nevertheless argues that they are not targeting Kansas as its use of CDNs benefits *all* users and is not intended to *specifically* benefit Kansas residents. *See*

---

[1] *See Briskin v. Shopify*, Inc., 135 F.4th 739, 757 n.15 (9th Cir. 2025) (Holding: "*Will Co.*'s and [*Webgroup's*] holdings that personal jurisdiction existed on the facts in those cases remain valid…").
[2] *See* FN1.

Doc. 33, Def.'s MTD, p. 14. But the Supreme Court has rejected this reasoning. A nationwide company that is everywhere, cannot be jurisdictionally nowhere except in its principal place of business and state of incorporation. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 355, 363 (2021). Accordingly, "express aiming does not require differential targeting." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 757 (9th Cir. 2025) (citing *Ford*, 592 U.S. at 363). Rather, a commercial website that takes deliberate steps to exploit a national market does "something more" sufficient to support jurisdiction in each forum where it profits from consumers. *Id*.

To put it another way: the focus of a purposeful direction inquiry is not whether a defendant targets one forum *more than* another, but whether it targets the forum *at all*. A defendant may direct its conduct toward several forums, or even all forums, but still be subject to jurisdiction in each. Thus, Defendant cannot insulate itself from jurisdiction in Kansas by appealing to the breadth of their reach when their own conduct demonstrates a purposeful effort to serve and profit from the Kansas forum.

Furthermore, Defendant contends that its CDN services are simply the contacts of a third party on which Plaintiff cannot rely. *See* Doc. 33, Def.'s MTD, p. 13. This argument is unpersuasive. The *WebGroup* and *Will Co*. courts did not base their findings of jurisdiction on the CDN's independent contacts but on the defendants' deliberate choice to purchase CDN services that improved website performance in the relevant forum. *See WebGroup*, 89 F.4th at 1200 ("[the defendants' purchase of U.S.-based content delivery network services to ensure faster website loading times and a more seamless viewing experience for U.S. users] … constitutes express aiming at the U.S. market"); *Will Co.*, 47 F.4th at 925 (finding purposeful direction where defendants "chose to purchase CDN services for North America," which made the site faster for U.S. viewers and slower elsewhere). As then-Judge Gorsuch has explained, such conduct is

"something like a bank shot in basketball. A player who shoots the ball off of the backboard intends to hit the backboard, but he does so in the service of his further intention of putting the ball into the basket." *Dudnikov, 514 F.3d at 1075*. So too here: Defendant may have contracted with Reflected Networks in a general sense, but it did so with the ultimate purpose of ensuring faster and more reliable playback for U.S. users, including those in Kansas. That deliberate choice constitutes purposeful direction by Defendant's own conduct.

Finally, Defendant argues that Plaintiff has failed to make a prima facie showing because he cannot allege that Reflected Networks' edge servers are physically located in Kansas. *See* Doc. 33, Def.'s MTD, p. 13. While Plaintiff does not know the precise placement of those servers, that fact is not dispositive. The very function of a CDN depends on geolocation, i.e. routing users to the server best positioned to improve their experience, wherever it may be. *See* Pl.'s Ex. A, Banafa Dec., ¶ 3-a. Thus, whether a particular server sits inside Kansas or just across its borders, the effect is the same: Kansas users are being targeted and served content with knowledge of their location. In any event, the Tenth Circuit has made clear that a plaintiff need not plead facts "over which it has no personal knowledge." *Brown v. City of Tulsa*, 124 F.4th 1251, 1268 (10th Cir. 2025) (citing Fed. R. Civ. P. 11(b)(3)). Where the plausibility standard is met and "asymmetry of information" exists, jurisdictional discovery is appropriate before dismissal. *Id*. at 1269. Accordingly, even if the precise location of Reflected Network's servers remains unknown to Plaintiff, the allegations here more than plausibly establish purposeful direction into Kansas.

II.   **The Exercise of Personal Jurisdiction does not Offend Traditional Notions of Fair Play and Substantial Justice.**

When a plaintiff satisfies its minimum contacts burden, the burden shifts to the defendant to demonstrate that exercising personal jurisdiction would nonetheless offend traditional notions of fair play and substantial justice." *Newsome*, 722 F.3d at 1271. "Such cases are rare."

*Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009) (emphasis added). Thus, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (emphasis added). In the present case, Defendant has provided no other considerations which render jurisdiction in this case unreasonable. Their apparent distaste with the Kansas age verification law that was passed and signed into law does not provide a compelling reason as to why finding personal jurisdiction here would be unreasonable.[3]

### III. Plaintiffs Should Be Granted Leave to Amend with the Benefit of Discovery if Necessary.

Plaintiff believes his Complaint meets the required pleading standard and dismissal is unwarranted. However, if this Court disagrees, Plaintiff respectfully request leave to amend and replead with the benefit of discovery. Courts in the Tenth Circuit have consistently held that when a plaintiff makes a prima facie showing of personal jurisdiction, raises factual disputes relevant to jurisdiction, or where a more satisfactory showing is necessary, limited discovery into jurisdictional facts is appropriate before resolving a Rule 12(b)(2) motion. *See GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*, 700 F. App'x 865, 871 (10th Cir. 2017) (holding that when a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion); *Proud Veterans, LLC v. Ben-Menashe*, No. 12-CV-1126-JAR, 2012 U.S. Dist. LEXIS 181257, 2012 WL 6681888, at *1 (D. Kan. Dec. 21, 2012) (stating that the court may not refuse jurisdictional discovery if pertinent facts are controverted or a more satisfactory showing is necessary); *7240 Shawnee Mission Holding, LLC v. Memon*, No. 08-2207-

---

[3] It is worth noting, as of October 1, 2025, twenty-five (25) states have passed and/or enacted laws requiring age verification to access online pornography. *See* Free Speech Coalition, *State Age Verification Laws*, Action Center (visited Oct. 1, 2025), https://action.freespeechcoalition.com/age-verification-resources/state-avs-laws/

JWL, 2008 U.S. Dist. LEXIS 93590, 2008 WL 4001159, at *4 (D. Kan. Aug. 26, 2008) (explaining that jurisdictional discovery should be permitted unless the plaintiff's claims are clearly frivolous).

Accordingly, Plaintiff respectfully requests limited jurisdictional discovery should the Court find it necessary to resolve the pending motion to dismiss.

## IV. Conclusion.

For the above reasons, the Plaintiff respectfully requests that the Court DENY Defendant's Motion to Dismiss.

>Respectfully submitted,
>
>/s/*Joshua W. Ruhlmann*
>Michael J. Wyatt    (#23260)
>Joshua W. Ruhlmann  (#29778)
>MANN WYATT TANKSLEY
>201 E. 1st Ave.
>Hutchinson, KS  67504-1202
>(620) 662-2400
>(620) 662-2443 (Fax)
>mike@mannwyatt.com
>josh@mannwyatt.com
>
>-and-
>
>Benjamin W. Bull*
>Christen M. Price*
>Victoria Hirsch*
>Khari James*
>NATIONAL CENTER ON
>SEXUAL EXPLOITATION
>1201 F St., NW, Suite 200
>Washington, DC 20004
>P: 202-393-7245
>bbull@ncose.com
>cprice@ncoselaw.org
>vhirsch@ncoselaw.org
>kjames@ncoselaw.org
>
>*Admitted via pro hac vice
>
>*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2025, the foregoing Motion was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Kautsch Law, L.L.C.
Maxwell E. Kautsch, #21255
810 Pennsylvania St., Ste. 207
Lawrence, KS 66044
Phone: (785) 840-0077
Fax: (785) 842-3039

-and-

Sandman Law LLC
Jeffrey Sandman*
5208 Magazine St., Ste 364
Phone: (978) 886-0639
jeff@sandman-law.com
*Pro hac vice motion forthcoming

*Attorney for Defendant Titan Websites Inc.*

 

                                          */s/ Joshua W. Ruhlmann*
                                          Joshua W. Ruhlmann