IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Q.R., a minor, by and through his natural mother and next friend JANE DOE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 6:25-cv-01096-KHV-BGS ) ) |
| TITAN WEBSITES, INC., and JOHN DOE D/B/A HENTAICITY.COM, | ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANT TITAN WEBSITES, INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS**

I.   **A website's "interactivity" does not guide the purposeful direction inquiry.**

Plaintiff leans on *Rainy Day Books, Inc. v. Rainy Day Books & Cafe, L.L.C.*—a case from the dial-up internet era that applied the *Zippo* "sliding scale" test examining (for jurisdictional purposes) the extent to which a website proves "interactive" (as opposed to merely "passive"). 186 F. Supp. 2d 1158 (D. Kan. 2002) (discussing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)). But, as Plaintiff recognizes, the Tenth Circuit has since cast the *Zippo* test aside—stripping *Rainy Day Books* of its import. *See Shrader v. Biddinger*, 633 F.3d 1235, 1242 n.5 (10th Cir. 2011) (declining to adopt or apply *Zippo*). Following *Shrader*, Kansas district courts likewise have dispensed with the "interactivity" inquiry and focused on intentionality.[1]

---

[1] *See, e.g., Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194, 1202 (D. Kan. 2016) (Crabtree, J.) (declining to apply *Rainy Day Books* and *Zippo* in favor of *Shrader*); *ClaimSolution, Inc. v. Claim Sols., LLC*, 2017 WL 2831330, at *3 (D. Kan. June 30, 2017)

1

But even if purposeful direction *did* hinge on a website's interactivity, Plaintiff hasn't shown that hentaicity.com is "highly interactive" in any sense. The defendant in *Rainy Day Books* was "engaging in Internet commerce with Kansas residents through its website," *see* 186 F. Supp. 2d at 1166, as were the defendants in each of the Plaintiff's other cited cases who sold goods to forum-based consumers through their websites.² But Kansans cannot spend money on hentaicity.com, however hard they try, because Titan does not sell any product. And even if it "uses ad networks to 'monetize traffic,'" *see* Opp. at 6, doing so is not relevant to classifying a website's "interactivity"—which concerns a website's engagements *with forum residents*, not with third party advertisers. It comes as no surprise, then, that Plaintiff does not cite a single case (nor can Titan find one) in which a website was deemed "highly interactive" merely because ads were displayed there. Some—including *Plaintiff*'s cases—hold precisely the opposite. *See Doe v. WebGroup Czech Republic, A.S.*, 93 F.4th 442, 455 (9th Cir. 2024) ("[T]ailoring ads to the particular geographic source of every particular user who visits a page is effectively the same as *passively* offering the webpage to any visitor from anywhere in the globe[.]").

II.     *Shrader* does not support the exercise of jurisdiction in this case.

---

(expressing "agree[ment] with another judge of this district who recently rejected application of the *Zippo* sliding scale and concluded that the analysis is more appropriately governed by the standards set forth by the Tenth Circuit in *Shrader*") (Lungstrum, J.).

² *See* Opp. at 5 (citing *Ceva Animal Health, LLC v. Leetronics Corp.*, 2023 U.S. Dist. LEXIS 104747, at *11 (D. Kan. June 16, 2023) (defendants "sold infringing products through an interactive Amazon storefront to Kansas residents"); *Parah, LLC v. G' Strat LLC*, 2014 U.S. Dist. LEXIS 17219, at *10 (D. Utah Feb. 7, 2014) ("Defendant has purposely set up a website providing for a high level of interactivity, which encourages customers to access its website to purchase the Accused Products."); *Del Sol, L.C. v. Caribongo, L.L.C.*, 2012 U.S. Dist. LEXIS 20542, at *10 (D. Utah Feb. 17, 2012) (same). Although plaintiff asserts "frequent and enduring use" of the *Zippo* "sliding scale" test, the test has only been applied in a trio of cases in the Tenth Circuit—two of which are from *Utah* district courts.

Because "appellate courts since *Zippo* have incorporated various additional requirements for internet contacts," even a court paying lip service to the *Zippo* sliding scale "would still be required to find satisfaction of *Shrader's* requirement of internet activity *aimed at* the forum state." *ClaimSolution*, 2017 WL 2831330, at *3 (emphasis added). Plaintiff begrudgingly concedes that the applicable standard is *Shrader*'s "'*Calder*-derived' framework" under which a prima facie case of purposeful direction requires a showing of "(1) an intentional act, (2) expressly aimed at the forum state, and (3) with knowledge that the brunt of the injury would be felt in that forum." Opp. at 6 (discussing *Calder v. Jones*, 465 U.S. 783, 791 (1984)).

Plaintiff's leading case does not bolster the argument that the hentaicity website satisfies *Shrader*'s "*Calder*-derived" framework. In *XMission, L.C. v. PureHealth Rsch.*, that "intentional act" was sending deceptive spam "newsletter emails" to 655 Utahns in violation of federal law, and the "aiming" was proven by the seller "knowing" that those emails would be received "in Utah." 105 F.4th 1300, 1310, 1311 (10th Cir. 2024). But in the instant case, the "act" is just the maintenance of a website available worldwide. There *is* no "aiming" because there is no specific outreach; the hentaicity website is available *everywhere, always, to everyone*. Reasoning otherwise would create irreconcilable tension with the axiom that "merely maintain[ing] a website that is accessible anywhere in the world . . . will not suffice to subject a defendant to specific personal jurisdiction." *Inspired by Design*, 200 F. Supp. 3d at 1205 (citing *Shrader*, 633 F.3d at 1244).

Then there's the added problem with Plaintiff's claim that Titan *knew* where all its site visitors hailed from. Knowledge (or lack thereof) that recipients of company promotional emails were based in Utah was the <u>single</u> deciding factor that distinguished *PureHealth* (where the *defendant* sent the emails) from *XMission L.C. v. Fluent LLC*, where a defendant hired *third*

3

*parties* to handle customer outreach and had "no involvement with or control over the origination, approval, or delivery" of the emails. *Id.* (quoting *Fluent,* 955 F.3d 833 (10th Cir. 2020)). As in *Fluent*, it is not Titan that is alleged to be collecting user location information, but the third-party ad network or content delivery network (CDN) companies that Titan has *hired*. Whether those parties know where heantaicity.com visitors are coming from is irrelevant (as the *Fluent* case makes plain), and like the defendant there, Titan has "no involvement with or control over" whatever geographic data its contractors might be privy to. *Plaintiff's own case* makes this point even more sharply. *See WebGroup*, 93 F.4th 442, 455 (9th Cir. 2024) ("[U]se of a 'third-party advertising company' to provide 'geo-located advertisements' that are '*always* directed' at *whatever* forum happens to be the source of that particular visit by a website user <u>does not constitute express aiming</u>.") (quoting *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1211 (9th Cir. 2020)) (italics in originals; underlining added).

Finally, Plaintiff is wrong to read into Titan's affidavit some admission that it "monitors where its users are located, measures the revenue attributable to those users, and has the ability to take deliberate action based on that information." Opp. at 8. *It doesn't*. The Declarant's estimates of Titan's paltry Kansas business post-date Q.R.'s hentaicity.com visit and are simply the byproduct of its use of third-party geolocation services contracted only to block visitors from states with age-verification laws, like Kansas. See Holcomb Decl. ¶ 16.

### III.   Contracting with a CDN does not amount to purposeful direction.

Appellate courts around the country hold that even a company's forum-based network *servers* do not suffice to establish minimum contacts.[3] Yet Plaintiff reaches even further by

---

[3] *See Carbone v. Kaal*, 140 F.4th 805, 812 (6th Cir. 2025) (Defendants' "use of Ohio-based servers alone fails to create a 'substantial connection' between Defendants and Ohio."); *Carefirst of Md., Inc., v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003) ("de minimis [] level

insisting that mere use of a CDN may suffice and pointing to decisions from the Ninth Circuit for support. *See* Opp. at 10 (discussing *WebGroup,* 93 F.4th 442 (9th Cir. 2024); *Will Co. v. Lee*, 47 F.4th 917 (9th Cir. 2022)). In both cases, plaintiffs relied on FRCP 4(k)(2), which treats the *entire United States* as the relevant forum for assessing the minimum contacts of foreign defendants subject only to federal claims. *See Will*, 47 F.4th at 922; *WebGroup*, 93 F.4th at 450-51.

The distinction between those cases and ours should be obvious: The operative forum in *Webgroup* and *Will* was the *entire United States*, and the contracted CDN (in *WebGroup*) and hosting company (in *Will*) were *based in the U.S.* But here, because Rule 4(k)(2) does not apply, the relevant forum is *Kansas*, and there is neither evidence nor allegation that Titan's contracted CDN is *based in Kansas* (or even aimed at delivering improved playback *for Kansans in particular*). Plaintiff's insistence that "targeting the entire United States necessarily includes targeting Kansas" does not suffice to show the "express aiming" required for minimum contacts. *See Carbone*, 140 F.4th 805 at 813 (distinguishing *Will* because "Rule 4(k)(2) does not apply" and "the minimum-contacts analysis under that rule focuses not on the defendant's contacts with a certain state, but with the United States generally"). In fact, "[a] survey of cases throughout the Ninth Circuit" shows *WebGroup* and *Will* to be outliers because generally, "the choice by a third party to operate its servers in the forum is insufficient to show that a foreign defendant who uses those servers purposefully directs their actions at the forum." *See Alhathloul v. DarkMatter Grp.*, 2023 WL 2537761, at *7–8 (D. Or. Mar. 16, 2023) (collecting cases). Because this Court's exercise of jurisdiction over Titan would flout due process, this case should be dismissed.

---

of contact created by the connection between an out-of-state defendant and a web server located within a forum."); *GreatFence.com, Inc. v. Bailey*, 726 F. App'x 260, 261 (5th Cir. 2018) (concluding that "a web server's location alone" did not establish personal jurisdiction when "defendants played [] role in selecting the server's location").

Respectfully submitted,

/s/Jeffrey Sandman
Jeffrey Sandman, La. Bar #39073*
Sandman Law LLC
5208 Magazine St., Ste 364
(978) 886-0639
jeff@sandman-law.com

/s/Maxwell E. Kautsch
Kautsch Law, L.L.C.
By Maxwell E. Kautsch, #21255
810 Pennsylvania St., Ste. 207
Lawrence, KS 66044
(785) 840-0077
fax (785) 842-3039
maxk@kautschlaw.com

*Admitted *pro hac vice*

Attorneys for Defendant Titan Websites, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was filed electronically on the date and time shown on the electronic file stamp, providing notice by CM/ECF to all counsel of record.

/s/ Maxwell E. Kautsch

_____
Maxwell E. Kautsch