IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Q.R., a minor, by and through his natural mother and next friend, JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>TITAN WEBSITES, INC.,<br><br>Defendant. | Case No. 6:25-cv-01096-HLT-BGS |

## MEMORANDUM & ORDER

Plaintiff Jane Doe sues Defendant Titan Websites, Inc. on behalf of her minor child Q.R. Defendant operates a commercial website that contains pornographic content. Plaintiff alleges that Defendant failed to comply with Kansas's age-verification law and her minor child was thus able to view pornography through its website. Plaintiff asserts multiple state-law theories of recovery.

Defendant moves to dismiss Plaintiff's complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) because it did not purposefully direct any of its activities at Kansas. Doc. 32. The Court agrees and grants Defendant's motion.

I.   BACKGROUND[1]

Kansas law sets standards for commercial entities knowingly sharing or distributing through websites material harmful to minors. K.S.A. § 50-6,146. Plaintiff claims Q.R. was able to

---

[1] The Court resolves Defendant's Rule 12(b)(2) motion without an evidentiary hearing. It therefore assumes the truth of Plaintiff's well-pleaded allegations only to the extent Defendant hasn't controverted them with evidence. If Plaintiff responds to Defendant's controverting evidence with evidence to support her allegations, then the Court accepts Plaintiff's view of things as true for the purposes of the motion. The Court does not weigh evidence or make factual findings. The statements in this section reflect Plaintiff's well-pleaded allegations plus allegations Plaintiff has supported with evidence and any unchallenged controverting statements backed up by evidence that Defendant has made.

surreptitiously gain access to pornography through Defendant's website because Defendant's age-verification measures do not comply with Kansas law.

Defendant operates a pornographic website (hentaicity.com). Defendant is not a Kansas resident. Defendant is a commercial entity that is formed and headquartered in Washington state. Defendant is not registered with the Kansas Secretary of State as a foreign corporation, does not have an authorized agent for service of process in Kansas, and does not pay taxes in Kansas. Defendant does not maintain any bank accounts, books, records, mailing addresses, or phone numbers in Kansas. Defendant has no officers, agents, or employees in Kansas, and it does not lease or own any real property in Kansas. Defendant does not process credit card transactions in Kansas, does not sell its content (by subscription or otherwise) in Kansas, has not received payment from a Kansas customer, does not contract with any vendors in Kansas, does not advertise or otherwise solicit business in Kansas, and does not design content specifically for the Kansas market.

Kansas enacted age-verification requirements for commercial pornographic websites. It is not alone. And, until Kansas and other states began to enact these laws, Defendant was agnostic about the geographic locations of its users. Defendant did not monitor its users' geographic locations through their IP addresses, nor did it engage a geolocation services company to do so. Since enactment of such laws, Defendant has taken measures to prevent Kansas users from accessing its site. Defendant has since determined that (prior to implementing georestrictions) Kansas residents comprised a miniscule proportion of Defendant's traffic, roughly 0.01%.

Although agnostic as to its users' geographic locations, Defendant does utilize a content distribution network (CDN) provider through its web-hosting service to facilitate the reliable delivery of its website's content across a large geographic area. Defendant's web-hosting service

does not offer the ability to customize its CDN to prioritize content delivery to a particular region. And, while Defendant also contracts with various ad networks to monetize traffic on its websites, Defendant's ad revenues are based on user impressions (or views) on a country-by-country basis.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges personal jurisdiction. A plaintiff overcomes this challenge by making a prima facie showing that the court has personal jurisdiction. *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1307 (10th Cir. 2024). The burden to prove personal jurisdiction belongs to the plaintiff. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). But the burden is "light" at the pleading stage. *Id.*

A court confronting such a motion accepts as true the plaintiff's well-pleaded jurisdictional allegations unless they have been controverted by the defendant through an affidavit or other evidence. The plaintiff must then support the controverted allegations by competent proof. *Id.* Because a court is not tasked with weighing evidence at this stage, the court resolves conflicting affidavits or evidence in the plaintiff's favor and will consider the plaintiff's "prima facie showing . . . sufficient notwithstanding the contrary presentation by the moving party." *Id.* (internal quotations and citation omitted).

## III. ANALYSIS

There are multiple parts to a personal jurisdiction analysis. The part this case focuses on is the limits to personal jurisdiction imposed by the Fourteenth Amendment's due process clause. Defendant argues that the Court lacks specific personal jurisdiction because Defendant does not have sufficient contacts with Kansas to make it amenable to jurisdiction. Defendant admits that its website was accessible in Kansas but argues that it did not intentionally direct its activities at Kansas. Defendant contends it merely operates a website that is universally accessible and, if any contact was made with the forum, it was a fortuitous contact owing to Q.R.'s unilateral conduct.

3

Plaintiff disagrees and argues that the ubiquity of Defendant's website and the ability to access the website anywhere does not insulate Defendant from the exercise of jurisdiction in Kansas. Plaintiff highlights Defendant's use of a CDN and argues that the availability of Defendant's website <u>everywhere</u> should not insulate Defendant from personal jurisdiction <u>anywhere</u>. The Court agrees with Defendant.

A.    **Personal Jurisdiction, Due Process, and Minimum Contacts**

The overarching standard for personal jurisdiction is well known. A plaintiff obtains personal jurisdiction over a nonresident defendant in a diversity action by showing that jurisdiction is legitimate under the laws of the forum state (here, Kansas) and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *PureHealth Rsch.*, 105 F.4th at 1307. This two-prong showing essentially collapses in Kansas because Kansas authorizes its courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process. *Progressive N.W. Ins. Co. v. New Horizons RV Corp.*, 2023 WL 7323321, at *2 (D. Kan. 2023).

Personal jurisdiction thus focuses on due process. And the touchstone for due process remains "whether the defendant purposefully established minimum contacts in the forum State." *PureHealth Rsch.*, 105 F.4th at 1307 (internal quotations and citation omitted). A plaintiff may establish the requisite minimum contacts under one of two theories: "general jurisdiction" or "specific jurisdiction." The type of jurisdiction at-issue here is specific jurisdiction. This theory focuses on "the relationship among the defendant, the forum, and the litigation." *Id.* at 1308 (internal quotations and citation omitted). If the requisite minimum contacts exist, due process also requires the court to determine that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Id.* at 1307-08 (internal quotation and citation omitted).

### B. Defendant's Kansas Contacts and Specific Personal Jurisdiction's Purposeful Direction Requirement

Defendant contends the Court lacks personal jurisdiction because Defendant did not purposefully establish minimum contacts in Kansas or, stated differently, purposefully direct its activities at Kansas. The Tenth Circuit has described at least four frameworks for assessing a defendant's purposeful direction of its activities at a forum. *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905, 909 n.21 (10th Cir. 2017). These frameworks are variously premised on (1) the defendant's continuing relationships with the forum, (2) the defendant's exploitation of commercial marketplaces in the forum, (3) the conduct by the defendant for which harmful effects are felt in the forum, and (4) the defendant's placement of goods in the stream-of-commerce.[2]

The parties focus on the third framework, which is sometimes referred to as the "harmful effects" framework. The framework looks at the intentional conduct of a defendant and assesses whether that intentional conduct targeted the forum state and had substantial harmful effects there. *Id.* at 907. The Tenth Circuit instructs lower courts to examine "whether the defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 845 (10th Cir. 2020) (internal quotations and citation omitted). The important point is "whether the defendant <u>intended</u> its online content to create effects <u>specifically in the forum state</u>." *Old Republic Ins. Co.*, 877 F.3d at 917 n.35 (emphasis added).

This is what Plaintiff is missing. Plaintiff does not make a prima facie showing that Defendant <u>intended</u> its online content to create effects in Kansas. The thrust of Plaintiff's position

---

[2] Plaintiff discusses at length the sliding-scale test first described by the Western District of Pennsylvania in *Zippo Mfg. Corp. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). The Tenth Circuit has declined to "take a definitive position" with respect to *Zippo*'s approach. *Old Republic Ins. Co.*, 877 F.3d at 908 n.18.

is that Defendant knew people from Kansas were accessing its website, that it actively facilitated this access by using a CDN, and that it received money in the form of advertising revenue from Kansas users who accessed its site. Plaintiff argues (among other things) that Defendant knew users from Kansas were accessing its site because Defendant was able to determine what percentage of its overall users came from the state and was ultimately able to shut down traffic to users attempting to access its site from Kansas. Plaintiff also argues that Defendant's use of a CDN implies that Defendant knew Kansans were using the site.

But these things do not show that Defendant purposefully directed its activities at Kansas. First, Defendant's awareness that traffic was coming from Kansas would, if true, weigh in favor of finding jurisdiction. This is part of what the Tenth Circuit held in *Shrader v. Biddinger*, 633 F.3d 1235, 1247-48 (10th Cir. 2012), when it explained that some amount of knowledge of where one's content is going is a necessary condition for specific jurisdiction. But this sort of knowledge isn't enough absent some <u>intentional</u> or <u>purposeful</u> act by Defendant. *See id.* And Defendant offers evidence via a declaration from its president that cuts against any meaningful knowledge about Defendant's users' geographic locations. The declaration states that "[u]ntil states began passing age verification laws, [Defendant] was entirely agnostic about, and unaware of, the whereabouts of its individual users." Doc. 33-1 at 3.

Second, Plaintiff notes Defendant's ability to eliminate user traffic from Kansas. But this does little to establish a meaningful connection to the forum. Plaintiff's argument relies on the Court's willingness to draw the negative inference that Defendant's later decision to shut off access to Kansans means Defendant's earlier failure to do so reflected a <u>purposeful</u> direction of its website at Kansas users. But were this sufficient to demonstrate purposeful direction, then a plaintiff would need only to allege that a defendant who operates a website could have, but failed to, eliminate

6

traffic to a particular forum. Embracing such a rule would create an avenue for the sort of "universal jurisdiction" in the internet context that appellate courts have regarded as clearly exceeding the limitations the Fourteenth Amendment's due process clause imposes.[3]

The Tenth Circuit in *Shrader* cautioned against this very thing, instructing that "the maintenance of a website does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Id.* at 1241 (collecting cases). What is necessary is some indication that "a defendant deliberately directed" its content to the forum state and that it "intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id.*

Third, Plaintiff notes Defendant's use of a CDN. A CDN forms part of a website's infrastructure and consists of geographically disbursed servers that contain copies of a website's content. A CDN allows the website's content to be delivered to users from a geographically proximate server. The idea is to prevent a decline in a website's performance for users who are located far from where the website is principally hosted. A CDN ensures Defendant's website's content is delivered through a network server that is geographically proximate to the forum, which, in turn, minimizes website load times. Shorter load times are critical because website users tend to drop off when a website slows down.

But merely intending that users accessing its content be able to do so from a wide geographic area is not the same as purposefully directing one's activities at a forum. As with the ability to limit access from a particular geographic area, Plaintiff's argument proves too much. Technical steps taken to make a universally accessible website easier for all users to access no matter where they are located is no more purposeful direction than the act of setting up the website

---

[3] Certainly, a defendant's efforts to avoid certain jurisdictions would seem to suggest the defendant <u>did not</u> avail itself of the forum.

in the first place. And just like the act of setting up a website, were the indiscriminate use of a CDN or other technologies to indiscriminately facilitate content delivery enough, "then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist." *Fluent LLC*, 955 F.3d at 844 (internal quotations and citation omitted).

This, of course, <u>does not mean</u> that a website owner's use of a CDN is never relevant. It also <u>does not mean</u> that a website owner's use of a CDN could never show purposeful direction. It <u>does mean</u> that more is needed to determine how the CDN is used and whether the CDN is being used to target a forum or an immediate region of which the forum is a part. The Court need not dissect the contours to resolve this case. Here, Plaintiff simply alleges that a CDN is being used and that the CDN has servers near the forum because logically it must. Defendant responds with evidence that it uses a third-party web-hosting service and that it does not know or care where the CDNs are located. This record is not enough to carry Plaintiff's admittedly light burden.[4]

Fourth, and finally, Plaintiff also offers Defendant's use of ad networks to monetize its traffic as an indication that Defendant purposefully directed its activities at Kansas. But this too falls short of the mark. There are at least two reasons. First, this line of argument fails to demonstrate how Defendant's site is meaningfully different from any other indiscriminate, universally accessible website. Second, the "contact" with Kansas created by the advertising is largely due to a third-party advertiser's activities and not Defendant's. Plaintiff alleges Defendant receives geographic data on its users and transmits that information to ad networks. Plaintiff alleges Defendant received payments from advertisers for the traffic Plaintiff and other Kansans generated on its website. Defendant acknowledges that it receives advertising revenue and does

---

[4] *See e.g.*, Patrick Lin, *Internet Jurisdiction: Using Content Delivery Networks to Ascertain Intention*, 24 VA. J.L. & TECH. 1 (2020) (discussing CDNs and personal jurisdiction).

not dispute that some of this revenue necessarily came from users in Kansas. But it asserts that its revenue is determined on a country-by-country, rather than a state-by-state, basis and that the revenue attributable to Kansas-based users (while they still had access) was miniscule. Defendant also maintains that although it received revenue from content accessed through Kansas users, what and whether users saw certain advertisements was not a decision it made. It was one left to the advertising networks it had contracted with. It's this last point that is the salient one: Purposeful direction focuses on the contacts <u>defendants</u> themselves make with a given forum, not the contacts made by plaintiffs or third parties. *E.g.*, *Fluent LLC*, 955 F.3d at 847.

Plaintiff has not met its burden to show that Defendant purposefully directed its activities at Kansas. The contacts between Defendant and the forum were not due to discriminating, intentional conduct that targeted Kansas. Rather, they were the random, and fortuitous contacts inherent in the operation of an indiscriminate and universally accessible website due to Plaintiff's and third parties' unilateral conduct. This is insufficient to support the exercise of specific personal jurisdiction. *Id.* at 840-41.

## IV.   CONCLUSION

The Court concludes that Plaintiff fails to state a *prima facie* basis for this Court's exercise of personal jurisdiction based on the prevailing standards and binding law.[5,6] The Court recognizes

---

[5] Where jurisdiction is lacking, 28 U.S.C. § 1631 requires courts to consider whether they should transfer the case to a district where jurisdiction exists rather than dismiss without prejudice. Section 1631 allows a court to transfer an action in lieu of dismissal "if it is in the interest of justice." Neither party specifically addresses § 1631, but a court can address it sua sponte. Here, the Court has considered whether transfer under § 1631 is in the interest of justice but finds dismissal without prejudice is appropriate instead. First, while it appears personal jurisdiction likely exists over Defendant in Washington, it's entirely possible Defendant is also amenable to jurisdiction in another forum, and the Court is disinclined to pre-select a venue for Plaintiff to the extent she could opt to re-file somewhere other than Washington.

[6] The Court notes Plaintiff's perfunctory request in her response to Defendant's motion for leave to amend her complaint with the benefit of jurisdictional discovery. The Court denies the request. First, Plaintiff's request for leave to amend is improper. The Court is under no obligation to recognize a perfunctory, conditional request to amend in a response to a motion to dismiss without a formal motion, an articulated basis for the request, or a proposed amended complaint. *E.g., Sullivan v. Univ. Kan. Hosp. Auth.*, 844 F. App'x 43, 51-52 (10th Cir. 2021).

the tension inherent in a doctrine premised on geographic limitations on its authority and the peculiarly non-territorial quality of the internet. The Court has made its best effort to navigate this developing area of the law. Nevertheless, the Court recognizes that this is an evolving arena that will benefit from further appellate-court guidance.

THE COURT THEREFORE ORDERS that Defendant's motion to dismiss for lack of personal jurisdiction (Doc. 32) is GRANTED. Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: February 10, 2026         /s/ *Holly L. Teeter*
                                 HOLLY L. TEETER
                                 UNITED STATES DISTRICT JUDGE

---

Second, it's Plaintiff's burden to demonstrate the need for jurisdictional discovery and any resulting prejudice from its denial. *Breakthrough Mgmt. Grp. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189-90 (10th Cir. 2010). Plaintiff has not attempted to satisfy this burden. Plaintiff has not, for instance, demonstrated what evidence she would seek to resolve controverted fact issues or to offer a more satisfactory factual showing. *See id.* To the extent Plaintiff seeks jurisdictional discovery, the Court denies the request.